Argued Aug. 1, decided Aug. 13, rehearing denied Oct. 1, 1912.

## . McINTOSH *v.* McNAIR.

(126 Pac. 9.)

**Sales—Action for Price—Evidence—Admissibility.**

1. In an action for the price of goods sold, where there was a dispute as to the agreed price, and no witnesses except the parties themselves testified on this point, evidence of circumstances attending the transaction, and of the seller's financial condition at the time of the sale, was competent.

**Witnesses—Cross-Examination—Scope and Extent.**

2. Under Section 860, L. O. L., authorizing the cross-examination of witnesses as to any matter stated on the direct examination, or connected therewith, but not prescribing the degree

of connection necessary, the scope of cross-examination is largely within the discretion of the trial judge, and will not generally be reviewed, except in case of an abuse of discretion; and if the cross-examination reasonably relates to matters brought out by the direct examination it is properly connected therewith.

### Witnesses—Cross-Examination—Scope and Extent.

3. In an action for the price of corporate stock sold by plaintiff to defendant, where there was a dispute as to the agreed price, and defendant claimed to have paid in full, after plaintiff had testified that he and defendant were partners in business, that they incorporated their business, that he assigned his share of the stock to a bank to secure payment of a debt, that defendant paid part of the purchase price to the bank and received the stock, and that, having received from the defendant a statement of account against a cheese company in which he was interested, he demanded payment of the balance of the purchase price, he testified on cross-examination, over objection, that he was president and manager of the cheese company, and had indorsed promissory notes for its accommodation; that the corporation had also given a note for the accommodation of the cheese company, which defendant had requested him to pay before he purchased the stock; that he had never informed the cashier of the bank what sum he received from the sale of the stock, nor told him that defendant owed him a balance thereon; that defendant, before he purchased the stock, requested him to release a personal account against the corporation, which he refused to do; that this account was subsequently paid by "swapping" accounts with defendant; and that he wrote defendant, authorizing him to credit the balance of his account to the credit of a debtor of the corporation, without any reference to the balance due on the purchase price, because he knew that defendant owed that, and that defendant knew he did not expect it at that time. Held, that the court did not abuse its discretion in permitting this cross-examination.

### Witnesses—Cross-Examination—Scope and Extent.

4. In an action for a balance claimed to be due on a sale of corporate stock, after defendant had denied that he purchased the stock cheap, because plaintiff was in debt, he was asked to explain why he and his attorney had introduced so much testimony to show that plaintiff was financially embarrassed, to which objection was sustained. Held, no error, since the question was argumentative, and endeavored to obtain explanation of a matter with which defendant was probably unfamiliar.

**Evidence—Actions for Price—Admissibility.**

5. In an action by a seller for the price of property sold, testimony that the seller would make promises to pay his debts and fail to perform his agreements was improperly admitted.

**Appeal and Error—Review—Harmless Error.**

6. Under the express provisions of Section 3, Article VII, of the Constitution, as amended in November, 1910, when a copy of the entire testimony given at the trial and the complete charge is attached to the bill of exceptions, where it appears from examination of the whole transcript that appellant had a fair trial, the judgment will be affirmed, notwithstanding errors in the admission of testimony.

From Multnomah: CALVIN U. GANTENBIEN, Judge.

Statement by MR. JUSTICE MOORE.

This is an action to recover money. It is alleged in the complaint that on July 20, 1905, the plaintiff, Peter McIntosh, sold and assigned to the defendant, Alex McNair, 100 shares of the capital stock of the McIntosh & McNair Company, a corporation, for the agreed consideration of $9,200, receiving on account thereof $7,000; that the defendant promised to pay the remainder in a reasonable time; and that, though such time had elapsed before bringing this action, the defendant had not paid any part of the $2,200, for which judgment was demanded.

The answer admitted the sale of the stock, but denied any agreement to pay therefor more than $7,000, which sum was alleged to have been the full consideration stipulated to have been paid therefor. The cause, having been tried, resulted in a judgment for the defendant, and the plaintiff appeals.                                    AFFIRMED.

For appellant there was a brief over the names of *Mr. Ralph R. Duniway*, and *Mr. Conrad P. Olson*, with an oral argument by *Mr. Duniway*.

For respondent there was a brief over the names of *Mr. H. T. Botts* and *Mr. Charles W. Fulton*, with an oral argument by *Mr. Botts*.

Mr. Justice Moore delivered the opinion of the court.

It is maintained that errors were committed in permitting the defendant's counsel, over objection and exception, to introduce testimony tending to prove independent collateral matters, not connected with the demand sued upon.

The plaintiff, as a witness in his own behalf, testified in support of the allegations of his complaint, and further in chief, to the effect that he had been associated as a partner with the defendant at Tillamook, Oregon, in the mercantile business; that their enterprise was incorporated in March, 1904, as the McIntosh & McNair Company, with a capital stock of $20,000, divided into 200 shares, of which he owned one-half and the defendant and his wife the remainder; that in March, 1905, the witness was owing the Tillamook County Bank quite a sum of money, to secure the payment of which he assigned to it his shares of the corporate stock; that on July 20, 1905, he sold and transferred to the defendant such stock for $9,200, receiving on account thereof $7,000, the defendant promising to pay the remainder as soon as it could be collected from the debtors of the corporation; that the money so received was paid to the bank, which transferred to McNair the shares of stock, though the witness then owed the bank the further sum of $2,200; that in December, 1905, he received from the defendant a statement of an account against the McIntosh Cheese Company, whereupon he demanded of McNair payment of the $2,200 as the remainder due.

On cross-examination, over the objection and exception of his counsel, plaintiff was required to admit that he was president and manager of the McIntosh Cheese Company, a corporation, which, prior to the sale of the stock referred to, was owing debts, and for its accommodation he indorsed its promissory notes; that the McIntosh & McNair Company had also given a note for the accommo-

dation of the cheese company in the sum of $2,000, which obligation the witness was requested to pay before the defendant would purchase the stock mentioned, whereupon the note was liquidated and exhibited to McNair.

Without any reference thereto in his examination in chief, the plaintiff on cross-examination, over the objection and exception of his counsel, testified that he never informed the cashier of the Tillamook County Bank what sum had been received from a sale of the stock, nor told him the defendant owed any balance on account of that purchase; and that prior to July 20, 1905, the defendant desired the witness to relinquish, as a part of the transaction respecting the sale of the stock, a personal account of about $700 or $800 against the McIntosh & McNair Company, which proposition was not acceded to.

On re-direct examination the plaintiff further testified that the personal account alluded to was due him as salary, a statement of which appeared on the books of the corporation owing the sum. On re-cross-examination the plaintiff, over the objection and exception of his counsel, was required further to testify concerning the $700 or $800 item, saying the sum was paid by swapping accounts with the defendant. His attention having been called to a letter which he wrote the defendant October 24, 1905, as A. McNair & Co., wherein it was stated: "You can credit Frank Long with one hundred dollars and debit my account. Also credit Ed. Donaldson with the balance of my account and debit me. Send me receipt from each party for the amount"—he was asked:

"Why didn't you, if you thought at that time that he owed you $2,200—why didn't you say, 'excepting the $2,200, the balance of your account?' excepting that?"

The witness, referring to the defendant, replied:

"Because he knew very well that he owed me $2,200, and he knew I didn't expect it until about the first of the year."

The defendant, as a witness on his own behalf, referring to the promissory note for $2,000, given by the McIntosh & McNair Company for the accommodation of the McIntosh Cheese Company, testified that when the plaintiff proposed the execution of that note he stated that he had secured from the bank all the money that he was able to obtain on his own commercial paper, but that a loan would be made on such accommodation note. Plaintiff's counsel thereupon moved to strike out such testimony, but, the application therefor having been denied, an exception was taken. The witness was permitted, over objection and exception of plaintiff's counsel, further to state upon oath that soon after the note last referred to was given the plaintiff stated to him that he believed he would have to sell his interest in the McIntosh & McNair Company, and solicited a sale of his stock to the defendant, who declined to purchase it; whereupon McIntosh inquired if any objection would be made to a sale of the stock to other persons, and was informed that none would be made.

The defendant also testified that, having secured some money, he offered the plaintiff for his stock $5,000 and also to pay him the remainder of the money which he had in the corporation, about $900, but the proposal was denied, McIntosh asserting that, considering the profit and loss account as disclosed by the books, he should receive for the entire property, $9,000; whereupon McNair replied that he could not consider the counter offer, because the sum demanded was too great—the business not being worth that amount.

McNair, referring to the plaintiff's demand of $700 or $800 against the corporation, was permitted, over objection and exception of plaintiff's counsel, to testify that such money was the remainder which McIntosh had put into the business, and that after he sold the stock he drew out on orders the money which he had thus invested.

On cross-examination McNair, having stated that he did not purchase the stock cheap, because the plaintiff at the time of the sale was in debt, was asked:

"Then will you explain to the jury how you, or why you and your attorneys, have put in so much testimony trying to show that Mr. McIntosh was embarrassed and short of money?"

An objection to this inquiry was sustained and an exception allowed.

The deposition of M. W. Harrison having disclosed that he was president of the Tillamook County Bank, parts of his answers to written interrogatories were, over objection and exception of plaintiff's counsel, read in evidence in effect that in the years 1904 and 1905 the bank had made many loans to McIntosh, taking as security therefor an assignment of capital stock of the McIntosh Cheese Company and of the McIntosh & McNair Company; that prior to the plaintiff's sale of the stock referred to he had owed the bank about $10,000, but that upon the receipt of $7,000 from McNair, to whom was assigned the stock of the McIntosh & McNair Company, there remained due from McIntosh, after giving him credit for such payment, $2,302.92. The following question and answer, found in Harrison's deposition and referring to plaintiff, were, over objection and exception, permitted to be read to the jury, to wit:

"What are the facts about his promising to pay up when the notes were due, and whether he did so?"

"A. He was always promising to pay; he was good at promising to pay, and never seemed to worry any about it when he did not meet his promise, until we were going to force him into a payment. I think that the reason that we had this stock transferred was that he was owing us $10,000, and promised us to pay, and there was a creamery for sale, and he went and bought that in place of paying us up, and then we went and had the stock actually transferred on the books."

1. In reversing a judgment in favor of the defendant on a former appeal in this cause, Mr. Chief Justice BEAN said: "Evidence of the assets of the corporation, including the book accounts, was proper as tending to show the value of its capital stock, and thus the probability of the price paid by defendant therefor." *McIntosh* v. *McNair,* 53 Or. 87, 91 (99 Pac. 74, 75). In the case at bar, the fact that the parties had been associated in business as partners and thereafter as jointly interested in the corporation which succeeded the firm probably explains the neglect to execute a writing evidencing the price stipulated to be paid for a transfer of the shares of capital stock. As the plaintiff and the defendant were the only persons present when their agreement was effected, and as they dispute the consideration stipulated to be paid for a transfer of the stock, resort was properly had to evidence of circumstances attending the transaction, from which the jury were to determine, if possible, the truth of the matter. A failure to apply this legal principle was one of the reasons for reversing the judgment on the former appeal. Since evidence of the assets of the corporation, including the worth of its book accounts on July 20, 1905, was justifiable as tending to establish the value of the capital stock, so proof of the financial condition of the plaintiff at that time was admissible, in order to enable the jury to determine the probability of a necessity on his part to effect a sale of the stock for a sum less than he now asserts. 1 Wigmore, Ev., § 392.

A sense of fairness to the respective parties evidently induced the trial court, in receiving proof of the value of the assets of the corporation at the time of the transfer, in order to show the probability of the price agreed to be paid for the capital stock, also to admit testimony tending to establish the plaintiff's pecuniary condition at that time, for the purpose of revealing a likelihood that he

negotiated a sale of the property for a sum less than $9,200. Proof of the plaintiff's financial condition immediately prior and at the time he negotiated a sale of the capital stock was therefore admissible, and no error was committed in receiving testimony to that effect.

2. The adverse party may cross-examine a witness as to any matter stated in his direct examination, or connected therewith. Section 860, L. O. L. The statute does not prescribe the degree of such dependence; and, in the absence of an enactment to that effect, the limit to which the cross-examination of a witness may be extended is largely a matter within the trial court's discretion, which exercise of judgment will not generally be reviewed, except in case of an abuse. A cross-examination confined to a repetition of what an adverse witness had stated in chief would be a waste of time and of no avail in an attempt to reveal the truth. For this reason, if the cross-examination of a witness reasonably relates to the matters brought out by his direct examination, it is properly connected therewith.

3. Examining the testimony given herein on cross-examination of the plaintiff, over the objection and exception of his counsel, it cannot be said that the discretion of the trial court was abused.

4. It will be remembered that an exception was taken by plaintiff's counsel to the court's refusal to allow the defendant, on cross-examination, to explain why he and his attorneys had put in so much testimony in an attempt to show that McIntosh, when he sold the corporate stock, was financially embarrassed. This inquiry was argumentative, and endeavored to obtain an exposition of the conduct of the defendant's counsel in the trial of a cause —a matter with which many clients are often unfamiliar, and hence unable to assign a valid reason therefor. No error was committed in this respect.

5. It is difficult, however, to justify the admission in evidence of that part of Harrison's deposition relating to plaintiff's propensity to make promises to pay his debts and his failure to perform his agreements. Such evidence did not tend to establish an attendant incident accompanying the sale of the capital stock from which might be deduced a reasonable probability as to the price agreed to be paid therefor.

6. Attached to the bill of exceptions is a copy of the entire testimony given at the trial and the complete charge of the court, to which no exception was taken. From a careful examination of the whole transcript, we are satisfied that, notwithstanding the matter to which attention has been called, the plaintiff had a fair trial.

Without further adverting to the errors assigned, and complying with the amendment of Section 3 of Article VII of the organic law, the judgment is affirmed.

AFFIRMED.