Argued March 20, affirmed July 5, petition for reconsideration allowed, former opinion withdrawn, reversed and remanded October 30, 1978

STATE OF OREGON, *Respondent,*

*v.*

KAREN LYNN MILLER, *Appellant.*

(No. B42-243, CA 9597)

582 P2d 1378

Ellen F. Rosenblum, Eugene, argued the cause and submitted a brief for appellant.

Carol J. Molchior, Certified Law Student, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

GILLETTE, J.

**GILLETTE, J.**

Defendant was charged with two counts of resisting arrest by aiding and abetting, and one count of assault in the third degree. After a trial to a jury, she was convicted of both counts of resisting arrest and acquitted of assault. Defendant appeals, asserting seven assignments of error.

The case arose out of the arrest of the driver of a pickup truck for driving while intoxicated. Defendant and two other women were passengers in the vehicle. Defendant was charged, along with the two other passengers, with twice resisting the arrest of the driver of the pickup. Count I alleged that defendant resisted officer George Wojcik. Count II alleged that as part of the same act and transaction defendant resisted officer Dale Scobert.

Dale Scobert was the officer who made the initial stop and attempted to place the driver under arrest. Officer Wojcik responded to Scobert's request for aid and eventually successfully completed the arrest of the driver. Defendant claims that she did nothing more than look on until one officer began dragging the arrested woman away. She claims that she then approached the officer and asked him to be more gentle since the woman he was arresting had an injured shoulder and foot. When the officer ignored her, defendant grabbed his arm to get his attention and was struck in the face by the officer. Defendant claims she had no further involvement in the incident.

Defendant's first assignment of error concerns the trial judge's ruling that a proper foundation had not been laid for impeachment of one of the state's witnesses by a prior inconsistent statement. Such a foundation is required by ORS 45.610.[1] The state's

---

[1] "A witness may be impeached by evidence that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places and persons present, and he shall be asked whether he made the statements, and if so, allowed to explain them. If the statements be in writing, they shall be shown to the witness before any question is put to him concerning them."

witness testified, on direct examination, that when he arrived on the scene all four women were involved in harassing the officer by yelling, tugging and pulling. On cross-examination, defendant's counsel asked the witness if he remembered giving a statement to a defense investigator. The witness responded that he did remember giving the statement. The examination continued as follows:

"Q. Do you recall what you told [the investigator] at that time with respect to the involvement of [the defendant] in the altercation?

"A. I, it's been so long, I don't really recall too much of what really took place . . .

"Q. You don't remember what you told [the investigator] at that time?

"A. Not everything I told him.

"Q. *Is it possible that you told him that the [defendant] didn't get involved in the incident until after you had taken one of the women and tossed her into the street?*

"A. *Right, I, I think I said to him that she really wasn't that involved.*

"Q. Well, you sure you didn't say. . .

"A. She, she did do some yelling, she did do some screaming at the officer, and I don't remember specifically her hitting him you know, like any heavy blows or anything of this nature.

"Q. Do you remember telling [the investigator] that she didn't have any physical contact with the officer?

"A. No—

"* * * * *

"Q. Mr. [witness], do you recall [the investigator] asking you at what point the [defendant] first became involved in the incident?

"A. Yes.

"Q. Alright, do you recall what your answer to that was?

"A. I said that, I believe that I said that she didn't *really,* . . . I felt that she wasn't really a big, you know, she wasn't doing as much as the blond or the redhead . . ." (Emphasis added.)

With this foundation, the state objected to any

testimony of the defense investigator concerning the statements of the state's witness. Defense counsel stated that the investigator would testify that the witness said that defendant did not become involved in the incident until the witness had himself become involved by throwing one of the women into the street.

■ On this record, we are not satisfied that the defense laid a sufficient foundation for impeachment, and therefore conclude that the trial court's ruling was correct. Only the one emphasized question, *supra,* could even conceivably be deemed to be an appropriate foundation for impeachment. In our view, the witness' answer to that question was an agreement that he had told the investigator exactly what he was alleged to have told him. Under these circumstances, there was nothing to impeach. We note that, once counsel became aware that the impeachment would not be allowed, counsel did not make any attempt to recall the state's witness for further cross-examination in an attempt to lay an appropriate foundation. *See State v. Smith,* 1 Or App 153, 458 P2d 687 (1969), *rev den* (1970).

Defendant's second and third assignments of error are interrelated. First, defendant objects to a question asked of one of the defense witnesses on cross-examination by the state. The question concerned the tone of voice of the officer who had originally stopped the pickup. Sometime after the initial stop, the officer left the pickup's driver (who had gotten out of her own vehicle and was standing by the police car), walked to the pickup and spoke to the remaining occupants of the cab section. Defendant objected to the question concerning the officer's tone of voice on the ground that the question was outside the scope of direct examination. The record discloses that on direct examination defense counsel did not ask the witness any questions concerning the initial stop of the vehicle or the conversation that the officer later had with the passengers. Direct examination was limited to the

[ 211 ]

defendant's activities, which did not begin until after the conversation in question. After defendant's objection was overruled, the witness stated the officer's tone of voice was "not particularly friendly or unfriendly," that it wasn't hostile, and that it did not seem to her that the deputy was, in the prosecutor's words, "trying to come on like a friendly guy."

Next, defendant assigns as error the admission of a tape recording of the officer's half of the conversation with the women in the truck which gave rise to assignment of error number two. The recording was made by the officer by placing a recording machine on the hood of his automobile. The tape included the officer's conversations with the driver, his brief conversation with the passengers in the front of the truck (not the defendant), and his attempted arrest of the driver. The recording stopped when the machine was knocked off the hood of the police car during a scuffle between the officer and the driver of the pickup.

The tape recording was admitted to impeach the defense witness' answer as to the tone of voice of the officer when he approached the passengers in the cab of the truck. Defendant claims that this amounts to the state opening the door for its own rebuttal testimony since, if the prosecution had not been permitted to ask the question, there would be nothing to impeach and the tape would not have come in.

The prosecutor's cross-examination questions concerning the tone of voice of the officer was improper because it was beyond the scope of direct examination. It should not have been permitted. ORS 45.570.[2] Standing alone, however, it is difficult to see how either the questions or the answers on this subject could have harmed the defendant.

---

[2] "The adverse party may cross-examine the witness as to any matter stated in his direct examination, or connected therewith, and in so doing may put leading questions; but if he examines him as to other matters, the examination is subject to the same rules as a direct examination."

A much more difficult question arises with respect to the contents of the tape recording. The state offered only that portion of the recording which portrays the officer's tone of voice when he spoke to the passengers in the pickup (their responses, if any, were not picked up on the tape). This portion is innocuous. It is the balance of the tape—which was also admitted—which defendant argues contains prejudicial and inflammatory matter by way of statements by the driver of the car whose arrest was to precipitate the entire incident.

In *State v. Gardner,* 16 Or App 464, 470, 518 P2d 1341 (1974), we stated:

> "ORS 45.600 provides that a witness may be impeached by the party against whom he was called, by contradictory evidence * * *. As a general rule, however, such impeachment may not relate to collateral matters. Stated otherwise, a cross-examiner must accept the answers he receives to questions 'not relevant to the issue and not touched on in direct examination.' *Smith v. White,* 231 Or 425, 433, 372 P2d 483 (1962)."

In *Smith v. White,* 231 Or 425, 432, 372 P2d 483 (1962), the court quoted the early case of *Williams v. Culver,* 39 Or 337, 341, 64 P2d 763 (1901), as follows:

> " 'Moreover, it is well settled that a witness cannot be cross-examined as to any fact that is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, in order thereby to discredit his testimony * * *.' " (Citation omitted.)

This long established rule is still valid in Oregon and controls this case. *See State v. Wolfe,* 273 Or 518, 526-27, 542 P2d 482 (1975); *State v. Jones,* 279 Or 55, 60 566 P2d 867 (1977).

The parties do not mention this body of law in reference to assignments of error two and three. The state argues that the conversation was relevant and that the defense had opened the door by having the witness testify that she was present. The state also relies upon the trial court's discretion. Defendant concedes the trial court's discretion in admitting re-

buttal evidence, (*Still v. Benton,* 251 Or 463, 445 P2d 492 (1968), *McIntosh v. McNair,* 63 Or 57, 126 P 9 (1912)), but argues that, since the rebuttal evidence was not necessary to rebut evidence introduced by defendant, it should not have been allowed. *State v. Fischer,* 232 Or 558, 376 P2d 418 (1962).

The tone of voice of the officer when he talked to the passengers was outside the scope of cross-examination. More importantly, the tone of voice of the officer is a collateral matter since it was never shown that defendant heard the conversation. Even if she had, it is difficult to see the relevancy. The rule, as stated in *Smith v. White, supra,* is: A matter is collateral where it could not be shown by the opposing party as part of their case. Here the tone of voice of the officer was not relevant since defendant did not hear it and could not have relied upon it as a reason to resist arrest in any event.

The state wished to introduce only that portion of the tape which covered the officer's conversations with the passengers in the cab of the truck. The defense insisted that if any of the tape was played, then all of it must be. The prejudicial material, if any, in the tape was contained in the conversation between the officer and the driver. This conversation would not have been before the jury except for the defense counsel's insistence. Had defendant resisted admission of the entire tape, and had the entire tape been received, we would be inclined to find the ruling prejudicial. Here we find error but no prejudice save that created by defendant's own tactical decision. Defendant is not entitled to a reversal on this point. *Cf., State v. Maple,* 23 Or App 626, 630-31, 544 P2d 183 (1975), *rev den* (1976).

Defendant's fourth assignment of error concerns the impeachment of a defense witness by two convictions for driving under the influence of liquor (DUIL). Defendant argues that, since the Oregon Legislature enacted ORS 484.400, the first such conviction was not

admissible for impeachment purposes. ORS 484.400 provides:

> "A conviction before or after June 27, 1975, of any of the statutory counterparts of offenses designated as traffic infractions in chapter 451, Oregon Laws 1975, shall not be used to impeach the character of a witness in any criminal or civil action or proceeding."

A first conviction for DUIL is a traffic infraction within the language of the statute.

■ The trial court allowed the first conviction to be used for impeachment because it believed that *Brown v. Multnomah County,* 280 Or 95, 570 P2d 52 (1977), changed the rule as to first DUIL convictions. This was error. *Brown,* while it holds that certain procedural rights must be accorded DUIL first offenders, in no way purports to alter ORS 484.400. The state concedes that the first DUIL conviction cannot be used for impeachment purposes but suggests that this constituted harmless error since the witness did have one properly admissible DUIL conviction.

We agree with the state that this error was very unlikely to have changed or influenced the result, and so decline to reverse on this ground. *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973).

■ Defendant's fifth assignment of error concerns the failure of the judge to give defendant's requested instruction on self-defense and defense of another. The instruction, which would have made it appear that defendant was legally entitled to assist another person in resisting arrest, was properly refused. ORS 161.260 states:

> "A person may not use physical force to resist an arrest by a peace officer who is known or reasonably appears to be a peace officer, whether the arrest is lawful or unlawful."

The purpose of this section is to take disputes concerning the validity of an arrest out of the streets and confine them to the courtrooms. Proposed Oregon Criminal Code 31, § 32 (1970).

Defendant argues ingenuously that it is the alleged *excessive force* being used by the officer, and not the *arrest,* that was being resisted. Such hair-splitting eviscerates the salutary rule of ORS 161.260, and we reject it.[3]

6. Defendant's sixth assignment of error concerns the trial judge's failure to give defendant's requested instruction on the "choice of evils" defense. That defense is provided by ORS 161.200, which states in relevant part:

> "(1) *Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971,* defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:
>
> (a) That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and
>
> (b) The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweight the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue." (Emphasis supplied.)

This requested instruction fails for the same reason that the instruction on self-defense or defense of another fails: It is inconsistent with ORS 161.260.

■ Assignment of error number seven claims error in the giving of the state's requested instruction concerning a police officer's right to use force. The instruction stated:

> "A peace officer or a police officer is justified in using physical force upon another person to the extent he believes reasonably necessary to make an arrest, to prevent an escape from custody or to defend himself from what he reasonably believes to be the use or imminent use of physical force.
>
> "On the other hand, no person may resist an arrest by a police officer who is known or reasonably appears to be

---

[3]This case does not involve the illegal use by an officer of deadly force.

a police officer regardless of whether the arrest itself is lawful or unlawful."

The first paragraph of the instruction is taken from ORS 161.235, which provides in part,

"* * * a peace officer is justified in using physical force upon another person <u>only</u> when and to the extent that he reasonably believes it necessary:

(1) To make an arrest or to prevent the escape from custody of an arrested person unless he knows that the arrest is unlawful; or

(2) To defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force while making or attempting to make an arrest or while preventing or attempting to prevent an escape." (Emphasis supplied.)

The instruction left out the emphasized word "only" from the statute. Defendant claims that this was error. Assuming it to be error, the omission in no sense prejudiced defendant, since she was not entitled to resist the arrest.

The judgment of the district court is affirmed.

Affirmed.