Argued and submitted April 18, reversed and
remanded for trial June 9, reconsideration denied August 21,
petition for review denied October 21, 1980 (289 Or 903)

STATE OF OREGON,
*Appellant,*

*v.*

EDDIE RAY CRANE,
*Respondent.*

(No. DA 165557-7903, CA 16033)

STATE OF OREGON,
*Appellant,*

*v.*

JAMES DAVID SIMPSON,
*Respondent.*

(No. DA 173934-7907, CA 16066)

STATE OF OREGON,
*Appellant,*

*v.*

SHAWN DION SIMPSON,
*Respondent.*

(No. DA 173952-7907, CA 16078)
(Cases Consolidated)

612 P2d 735

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. On the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and James M. Brown, Assistant Attorney General, Salem.

Emily Simon, Portland, argued the cause for respondents. With her on the brief were David Schermer, Martha Takaro, Certified Law Student, and Ellen Pitcher, Research Law Student, Portland.

David L. Slader, Portland, filed a brief amicus curiae for ACLU Foundation of Oregon, Inc.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is one of three cases[1] in which we are asked to decide the constitutionality of the Resisting Arrest statute, ORS 162.315.[2] Each of the defendants in the cases now before us was charged with the misdemeanor of resisting arrest. Each demurred to the complaint, challenging the underlying statute as unconstitutional. The trial courts sustained the demurrers, concluding that the statute is unconstitutionally vague and overbroad, and dismissed the complaints. The state appeals. We reverse.

Defendants in these cases advance three arguments in support of their contention that the resisting arrest statute is unconstitutional. We deal with each in turn.

Defendants' first contention is that subsection (3) of ORS 162.315 interferes with their right to resist an unlawful arrest. The right to resist an unlawful arrest was established at common law. *John Bad Elk v. United States,* 177 US 529, 20 S Ct 729, 44 L Ed 874 (1900); *United States v. Di Re,* 332 US 581, 68 S Ct 222, 92 L Ed 210 (1948). The rule, as stated in Oregon, was that a person had the right to defend himself against an illegal arrest, "using no more force than reasonably necessary" to prevent the arrest. *State v.*

---

[1] *State v. Bradford,* 46 Or App 492, 612 P2d 742; *State v. Llewellyn,* 46 Or App 492, 612 P2d 742 (1980).

[2] ORS 162.315 provides that:

"(1) A person commits the crime of resisting arrest if he intentionally resists a person known by him to be a peace officer in making an arrest.

"(2) 'Resists', as used in this section, means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person.

"(3) It is no defense to a prosecution under this section that the peace officer lacked legal authority to make the arrest, provided he was acting under color of his official authority.

"(4) Resisting arrest is a Class A Misdemeanor."

[549]

*Swanson,* 119 Or 522, 527, 250 P 216 (1926); *State v. Linville,* 127 Or 565, 273 P 338 (1928); *State v. Meyers,* 57 Or 50, 110 P 407 (1910). The Oregon legislature specifically abrogated this right with the enactment of ORS 162.315 and ORS 161.260. ORS 161.260 provides that:

"A person may not use physical force to resist an arrest by a peace officer who is known or reasonably appears to be a peace officer, whether the arrest is lawful or unlawful."

The legislature, while recognizing the common law rule, rejected self help as a desirable means of challenging arrests made under color of state law. It decided that disputes concerning the legality of an arrest are best resolved in the courtroom and not on the streets.

"Resistance demands an escalation of force by the peace officer. Civil disorder and disrespect for the law is thereby threatened. Two important, and sometimes conflicting, interests must be balanced; the individual's right to bodily security measured against the threat to society posed by violent street confrontations between private citizens and the police. The Commission favors recourse by the aggrieved citizen to traditional tort remedies, which have been greatly liberalized in favor of the individual citizen." Proposed Oregon Criminal Code, 204 § 206, and 31 § 32, Commentary (1970), *see also State v. Miller,* 35 Or App 207, 215, 582 P2d 1378, *vacated on other grounds,* 36 Or App 859, 585 P2d 772 (1978).

The common law right to resist an unlawful arrest has been viewed with increasing disfavor by both courts and state legislatures. *United States ex rel Kilheffer v. Plowfield,* 409 F Supp 677, 680 (ED Pa 1976); *United States ex rel Horelick v. Criminal Ct., City of New York,* 366 F Supp 1140, 1151 (SD NY 1973), *rev'd on other grounds* 507 F2d 37 (1974); *Miller v. State,* 462 P2d 421, 426-27 (Alaska 1969); *see also United States v. Simon,* 409 F2d 474 (7th Cir 1969) cert den 396 US 829 (1969); *United States v. Heliczer,* 373 F2d 241 (2nd Cir 1967) cert den 388 US 917 (1966);

*United States v. Ferrone,* 438 F2d 381 (3rd Cir 1971)
cert den 402 US 1008 (1971); *see generally* Chevigny,
The Right to Resist an Unlawful Arrest, 78 Yale L. J.
1128 (1969); Defiance of an Unlawful Authority, 83
Harvard L. R. 626 (1970). Although a constitutional
basis for the right to resist an unlawful arrest has
been suggested, the United States Supreme Court has
declined to rule on the matter and the majority of
courts considering the issue have failed to find such a
constitutional right. *See* Chevigny, *supra,* 78 Yale L.J.
at 1141; *Wainwright v. City of New Orleans,* 392 US
598, 88 S Ct 2243, 20 L Ed 2d 1322 (1968) (Douglas, J.,
dissenting) (suggesting a right rooted in the 4th
Amendment); *United States ex rel Kilheffer v. Plow-
field, supra; United States ex rel Horelick v. Criminal
Ct., City of New York, supra; People v. Curtis,* 70 Cal
2d 347, 74 Cal Rptr 713, 450 P2d 33 (1969); *see also
People v. Lattanzio,* 35 A D2d 313, 316 NY S2d 163
(NY App 1970). We, too, decline to recognize such a
right.

An arrest is clearly a "seizure" as that term is used
in the Fourth Amendment. An illegal arrest, *i.e.,* an
arrest without a warrant or probable cause, violates
the Fourth Amendment prohibition against unreason-
able searches and seizures. However, prohibiting re-
sistance to an unlawful arrest does not add to the
violation of the individual's Fourth Amendment
rights. As the California Supreme Court has stated:

> "While defendant's rights are no doubt violated
> when he is arrested and detained a matter of days or
> hours without probable cause, we conclude the state
> in removing the right to resist does not contribute to
> or effectuate this deprivation of liberty. In a day
> when police are armed with lethal and chemical
> weapons, and possess scientific communication and
> detection devices readily available for use, it has
> become highly unlikely that a suspect, using *reason-
> able* force, can escape from or effectively deter an
> arrest, whether lawful or unlawful. His accomplish-
> ment is generally limited to temporary evasion,

[551]

merely rendering the officer's task more difficult or prolonged. Thus self-help as a practical remedy is anachronistic, whatever may have been its original justification or efficacy in an era when the common law doctrine permitting resistance evolved. Indeed, self-help not infrequently causes far graver consequences for both the officer and the suspect than does the unlawful arrest itself. Accordingly, the state, in deleting the right to resist, has not actually altered or diminished the remedies available against the illegality of an arrest without probable cause; it has merely required a person to submit peacefully to the inevitable and to pursue his available remedies through the orderly judicial process." *People v. Curtis, supra,* 70 Cal 2d at 353 (emphasis supplied).

Assuming, as the California court apparently did, that forcible resistance to arrest was once justified we see no requirement that this continue to be true today. The expansion of procedural safeguards, such as the right to reasonable bail, the right to court appointed counsel at an early stage in the criminal process, and the right to a prompt judicial determination of probable cause following arrest, lessen the impact of an unlawful arrest. *See United States ex rel Kilheffer v. Plowfield, supra,* 409 F Supp 677, 681; *see also Miller v. State, supra,* 462 P2d at 426. Moreover, an individual who is arrested unlawfully is not without recourse. Release from illegal detention can be obtained by a writ of habeas corpus, ORS 34.310, and civil remedies are available to vindicate violation of an individual's constitutional rights.

Finally, we note that the right to resist even an unlawful arrest made under color of law is only partially abrogated. Only the use or the threatened use of violence or physical force which creates a substantial risk of physical injury is prohibited; neither flight to avoid arrest nor passive resistance have been made crimes. *See State v. Swanson,* 34 Or App 59, 62, 578 P2d 411 (1978); Proposed Oregon Criminal Code § 206 Commentary (1970). Neither does the statute deny

any citizen the right reserved to all citizens, even where the arrest is lawful, to resist an arrest made with excessive force. *See, generally,* ORS 161.235; 161.249; 161.195; 161.200; 161.209; *see also State v. Matthews,* 30 Or App 1133, 569 P2d 662 (1977).[3]

Respondents next two arguments are somewhat intertwined: They argue that subsection (2) of ORS 162.315 is both vague and overbroad. Specifically, they challenge the phrase "or any other means that creates a substantial risk of physical injury to any person," and the inclusion of "threats" in the conduct that is prohibited.

In some cases, the doctrines of vagueness and overbreath are distinguishable; in others they overlap.

> "The former, originally a due process doctrine, applies when the statutory language is unclear, and is concerned with notice to the potential wrongdoer * * *. The doctrine of overbreadth, in contrast, is exclusively a First Amendment product, and usually applies when the statutory language is clear, but encompasses activities in which people have a right to engage without interference. However, in a suit challenging an ambiguously worded statute for infringing upon First Amendment rights, the doctrines blend." *United States v. Lambert,* 446 F Supp 890, 897 (D. Conn. 1978).

The defendants seem to raise these arguments both separately and in conjunction.

We turn first to the contention that use in subsection (2) of the words "any other means that creates a substantial risk of physical injury to any person"

---

[3] This court has previously stated that a person is justified in forcibly resisting an arrest when he is faced with the illegal use of deadly force by an officer. *State v. Hall,* 36 Or App 133, 139, 583 P2d 587 (1978); *see also State v. Miller,* 35 Or App 207, 582 P2d 1378 (1978), *vacated on other grounds* 36 Or App 859, 585 P2d 772 (1978); *City of Klamath Falls v. Winters,* 42 Or App 223, 600 P2d 478 (1979), *rev allowed* (1980). We are persuaded now that even this limitation is too narrow, and that the right must exist wherever the arrest is being effected by means of force in excess of that authorized by law. Our opinion in the above cases are modified accordingly.

causes the statute to be vague. Penal statutes are required to be clearly and definitely written.

> "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford,* 408 US 104, 108-109, 92 S Ct 2294, 33 L E2d 222 (1972); *see also State v. Hodges,* 254 Or 21, 27, 457 P2d 491 (1969); *City of Portland v. Arndarfer,* 44 Or App 37, 41-41, 604 P2d 1279 (1980).

On its face the phrase here challenged is not a paradigm of precision. However, in examining a statute of questionable constitutional validity we have a duty to construe it, if at all possible, to save its constitutionality. *State v. Page,* 43 Or App 417, 602 P2d 1139 (1979). Legislative history may be examined to determine if the general words used can be limited to conduct the legislature intended to suppress. *State v. Tucker,* 28 Or App 29, 32, 558 P2d 1244 (1977).

The commentary to the then proposed resisting arrest statute speaks to the type of conduct the legislature intended to be included within the term "resists."

> "Subsection (2) defines 'resists' in terms of physical force or violence. Resistence is prohibited if it 'creates a substantial risk of physical injury to any person,' *i.e.,* the actor, the peace officer or other persons in the immediate area.
>
> "Resisting arrest is usually manifested by physical violence directed at the arresting officer. Section

206 is limited therefore to the use, or threatened use, of physical violence or other acts producing a 'substantial risk of physical injury.' Neither flight from arrest nor passive resistance should be made crimes in themselves." Proposed Oregon Criminal Code, § 206 Commentary (1970); *see also, State v. Swanson, supra,* 34 Or App 59.

From this commentary, it is clear that passive resistance is not prohibited. Physical resistance is only included when it amounts to violence or force directed at the arresting officer and is likely to cause physical injury to any person in the immediate vicinity.

Next, we turn to the phrase "substantial risk of physical injury." What constitutes a "risk of injury" in any given situation is to some extent a question of degree. The term "risk" is limited by the word "substantial". "Substantial", as commonly used, means "real, actually existing, not seeming or imaginary". Webster's 3rd International Dictionary (1976). The risk must be caused by the use or threatened use of violence or physical force. We find the standard set by this statute to be sufficiently clear to be understood by persons of common understanding.

As this court has elsewhere stated:

"A determination of whether a statute is void for vagueness necessarily involves a question of degree. The legislature need not define an offense with such exactitude that a person could determine in advance whether specific conduct in all possible factual circumstances will be found to be an offense." *State v. Williams,* 37 Or App 419, 422, 587 P2d 1049 (1978).

In *Williams,* the defendant challenged the definition of the word "contraband" in relation to the crime of supplying contraband, ORS 162.185(1). Contraband was defined in part as any item "whose use would endanger the safety or security of such institution or any person therein." ORS 162.135(1). We concluded that the question of whether the contraband "endangers the safety or security of the institution" was a

question of degree for the jury to decide, subject to the requirement that there be competent proof on that issue. *Id.,* at 424. So, too, the question of whether the act of resisting arrest "creates a substantial risk of physical injury" is a question of fact for the jury to decide. Since this case comes to us on demurrer, we do not consider what quality or quantum of evidence is necessary to prove that a substantial risk of injury was created. *Ibid.*

The statute also includes, within its definition of resist, "the threatened use of violence, physical force or other means * * *." Defendants argue that this phrase, when coupled with the language, "substantial risk of injury," causes the statute to be overbroad in that it infringes upon protected First Amendment rights. Alternatively, they seem to argue that, even if the statute is clear, the prohibition against threats still causes the statute to be overbroad.

The United States Supreme Court in *Grayned, supra,* noted a third function of the vagueness doctrine:

> "Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" * * * than if the boundaries to the forbidden areas were clearly marked.' " *Grayned v. City of Rockford, supra,* 408 US at 109.

The court also stated that "a clear and precise enactment may nevertheless be overbroad if in its reach it prohibits constitutionally protected conduct." *Id.,* at 114.

There is no question that the prohibition against "threats" has the potential of prohibiting certain speech. In some cases it might also interfere with the right of assembly, as in the case where the police are attempting to arrest a group of protestors. This does not mean, however, that the statute is unconstitutional.

[556]

The phrase "threatened use of violence" is limited by other words in the statute and by legislative history. It must be the threatened use of physical force or violence directed at the arresting officer and likely to create a substantial risk of physical injury to persons in the immediate area. We have already determined that the phrase "creates a substantial risk of physical injury" is not vague. Threats are thus limited both by the type of threat that is included and the result the threat is likely to produce. However, keeping in mind the rule that, where First Amendment rights are involved, statutes must be strictly tested, we further limit the application of this section as hereafter described. *See Ashton v. Kentucky,* 384 US 195, 200, 86 S Ct 1407, 16 L Ed 2d 469 (1966); *State v. Hodges, supra* 254 Or 26.

In *Terminiello v. Chicago,* 337 US 1, 4, 69 S Ct 894, 93 L Ed 1131 (1948), the United States Supreme Court stated that freedom of speech is protected against punishment "unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest." *See also Bridges v. California,* 314 US 252, 263, 62 S Ct 190, 86 L Ed 192 (1941). In *State v. Marker,* 21 Or App 671, 536 P2d 1273 (1975), this court was faced with a challenge to the disorderly conduct statute, ORS 166.025. The contention was raised that the prohibition against unreasonable noise caused the statute to be overbroad when the noise involved was a form of speech. Interpreting the statute in a constitutional manner, we held that "when speech is involved it can be classified as prohibited noise only if there is a clear and present danger of violence or if the communication is not constitutionally protected speech but merely a guise to disturb people." *Id.,* at 679.

Applying the *Marker* reasoning to the case before us, we hold that speech and other behavior otherwise protected by the First Amendment constitutes resisting arrest only when it amounts to a threatened use of

[557]

physical force or violence directed at the police officer and there is a clear and present danger of physical injury to persons in the immediate vicinity.[4]

In summary, we hold that ORS 162.315 prohibits resistance to unlawful, as well as lawful, arrests whenever the person to be arrested knows that the individual making the arrest is a police officer, unless the arrest is being effected with unreasonable physical force. The statute does not prohibit passive resistance. Only physical acts implying force or violence or the threatened use of such acts are prohibited. The act or threat must be directed toward the arresting officer and create a substantial risk of physical injury to the officer or other persons in the immediate vicinity. When speech or other First Amendment behavior is involved the crime of resisting arrest occurs only when a defendant's activity presents a clear and present danger of physical injury.

Reversed and remanded for trial.

---

[4] We note that the example submitted by amicus in this case, of a group of protestors who clench their fists at police and sing "We shall not be moved" in response to a declaration that they are under arrest, does not constitute resisting arrest because, among other things, it represents only an offer of passive resistance and therefore does not indicate a clear and immediate risk of injury to anyone.