Darrell W. BARNES *v.* STATE of Arkansas

CA CR 81-53                              628 S.W. 2d 334

Court of Appeals of Arkansas
Opinion delivered February 17, 1982
[Rehearing denied March 17, 1982.]

*Tiner & Easterling,* by: *Charles R. Easterling,* for appellant.

*Steve Clark,* Atty. Gen., by: *Arnold M. Jochums,* Asst. Atty. Gen., for appellee.

MELVIN MAYFIELD, Chief Judge. Darrell Barnes was found guilty of battery in the second degree and was sentenced to three years in the Department of Correction. Gary Foster, a codefendant, was found not guilty.

The evidence, viewed in support of the verdict, can be summarized as follows:

Barnes and Foster were involved in an altercation at a nightclub outside Trumann, Arkansas, during the early

morning hours of April 5, 1980. Barnes had been in a fight inside the club which the club manager had broken up by hitting Barnes with a "regular night stick." The manager and the bouncer then ejected Barnes from the club. Outside, the bouncer and Barnes got into a fight and while this fight was going on, in response to a call by the manager, a deputy sheriff drove up. He was in uniform, with a badge, and wearing a gun. When he drove up in a police car with lights on the fighting stopped.

Foster, who had picked up the bouncer's "stick" which had been dropped when the bouncer and Barnes started fighting, was standing against a wall with a ring of fifteen or twenty people around him. The deputy sheriff asked what was going on and the manager pointed to Foster and said he was giving them a lot of trouble. The deputy told Foster to get in the sheriff department's car and Foster refused. The deputy then noticed Foster working his hand up to the top of the "stick" he was holding and told him to drop it and when he didn't the deputy hit him over the head with his flashlight.

Barnes then grabbed the deputy from behind and this led to the eventual result of Barnes' getting the deputy's flashlight and knocking him to the ground with it. Barnes hit the deputy three or four times with at least one blow coming while the deputy was on the ground with Barnes standing astraddle of him. Barnes got the deputy's gun, swung it around at the crowd, and took off around the building. The deputy was taken to a Jonesboro hospital in an ambulance, received eight stitches, and was then transferred to a hospital in Memphis. He had a hematoma and a concussion; was in the hospital seven days; and was off work about six weeks.

Barnes' first two points for reversal are that the trial court excluded evidence of events that preceded the altercation with the deputy sheriff and that the court commented on evidence concerning those events.

### Exclusion of Evidence

It is appellant's contention that what happened inside

the club and what happened outside constituted one on-going episode, was part of the res gestae, and would have better enabled the jury to understand appellant's mental state and the reasonableness of his belief that he was in danger of great bodily harm. The short answer is that there *was* evidence introduced about what occurred inside the club. And while there was some limitation on the details, we cannot find any proffered evidence excluded which could have made any difference to the jury. Even relevant evidence may be excluded under Rule 403 of the Arkansas Uniform Rules of Evidence if its probative value is substantially outweighed by undue delay or waste of time. We do not find the court committed error in the exclusion of evidence.

### Comment on the Evidence

During cross-examination of the club manager the court sustained an objection to a question about events inside the club. Despite that ruling, questions were asked and answered about those events. When the next witness testified, there was another question asked about the events and in sustaining the objection the court said: "The court is going to sustain the objection for the same reasons indicated to the last witness which got out of hand . . . . " A motion for mistrial (out of the hearing of the jury) was then made by defense counsel on the ground that the court had suggested counsel had done something improper. After the motion was denied the court told the jury:

> Ladies and gentlemen, I might give you this one further admonition. The Court perhaps in choice of words said it may have got out of hand. I am not attempting to lay or fix any blame on the part of defense counsel or the prosecution. The Court is responsible for conducting and controlling the trial and the admissibility of evidence and testimony. The Court let it go a little further than it felt like it should have into relevant matters a moment ago. I am not pointing any blame at anybody other than myself.

At this point another motion for mistrial was made (out of the hearing of the jury). This motion was based on the

proposition that the court had made a comment on the evidence. The appellant's brief sets out the above and simply says:

We submit that the Court's statement was a comment on the evidence and a mistrial should have been granted. Article 7 § 23, Constitution of Arkansas. See also *McMillan* v. *State*, 229 Ark. 249 (1958).

We do not think the court made a comment on the evidence. The facts in the case cited by appellant are certainly not similar to those in the instant case. The jury was admonished in the words of AMCI 101 (f) that the judge had not intended by anything he had done or said to intimate or suggest what they should find to be the facts. We do not agree that appellant's motion for mistrial should have been granted. See *Brown & Bettis* v. *State*, 259 Ark. 464, 471, 534 S.W. 2d 207 (1976).

### Jury Instructions

The appellant contends the court erred in modifying AMCI 4105 on justification by adding the following language:

A person may not use physical force or deadly physical force to resist a lawful or unlawful arrest by a person who is known, or reasonably appears, to be a law enforcement officer.

This language comes from Ark. Stat. Ann. § 41-512 (Repl. 1977). In his brief the appellant says the above statute does not deprive one of the defense of justification if the law enforcement officer uses excessive force in making an arrest. In the Commentary to the statute it is said:

Section 41-512 adopts the "no sock" principle discouraging physical resistance of an arresting officer. As pointed out by the *Commentary to Proposed Oregon Code* § 32: "[O]rderly procedure dictates peaceful submission to duly constituted law enforcement in the first instance; and . . . if it develops that the officer

was mistaken and the arrest unauthorized, ample means and opportunity for remedial action in the courts are available to the person arrested."

. . . .

Under prior law it was clear that under no circumstances might one employ physical force to resist a lawful arrest. Whether one could justifiably utilize physical force to resist an unlawful arrest or execution of process was, however, unclear. Of course, if the 'unlawfulness' of the arrest lay in the use of excessive physical force upon the person to be arrested, the principles set out by the cases in the Commentary to §§ 41-506, 507 permitted self-defense.

The commentary to Oregon's proposed "no sock" statute referred to above was quoted in a concurring opinion in *State* v. *Laurel,* 476 P. 2d 817 (Or. Ct. App. 1970). It says that an unlawful arrest could be resisted at common law but says the modern trend is in the direction of a provision that one may not resist arrest by a law enforcement officer whether the arrest is lawful or unlawful. And it also says, "if the unlawful manner of the arrest reasonably leads the arrestee to believe he is the victim of a murderous assault, or of kidnappers, homicide committed by him will not be criminal if he uses no more force than reasonably appears to be necessary under the circumstances."

After the statute was adopted in Oregon it was found constitutionally sound and the court held that it did not deny the right to resist an arrest made with excessive force. *State* v. *Crane,* 612 P. 2d 735 (Or. Ct. App. 1980).

In *State* v. *Ramsdell,* 285 A. 2d 399 (R.I. 1971) the Supreme Court of Rhode Island, where the common law right to resist unlawful arrest has been abolished by statute, explained the reason for the difference in submitting to arrest — whether lawful or unlawful — and a reasonable defense against excessive force in making an arrest.

There is a reasonable rationale for one rule which

requires a citizen to quietly yield to an unlawful arrest and another rule permitting a citizen to use reasonable force to counter the excessive force of an arresting officer. Implicit in the adoption of these two principles is a recognition that liberty can be quickly restored by resort to the legal profession and an acknowledgment that, unless a citizen is afforded the opportunity to protect himself, the restoration of a fractured limb falls within the exclusive province of the medical profession. The abolition of the common-law right to resist an unlawful arrest, therefore, is in no way related to the citizen's right to protect himself from the excessive force of what might be described as an overzealous police officer.

And in *State* v. *Mulvihill,* 57 N.J. 151, 270 A. 2d 277 (1970) the New Jersey Supreme Court stated two qualifications to this right of defense:

Two qualifications on the citizen's right to defend against and to repel an officer's excessive force must be noticed. He cannot use greater force in protecting himself against the officer's unlawful force than reasonably appears to be necessary. If he employs such greater force, then he becomes the aggressor and forfeits the right to claim self-defense to a charge of assault and battery on the officer. See Restatement, Torts 2d, § 70, p. 118 (1965). Furthermore, if he knows that if he desists from his physically defensive measure and submits to arrest the officer's unlawfully excessive force would cease, the arrestee must desist or lose his privilege of self-defense.

Other cases on this point are the subject of the Annotation in 44 A.L.R. 3d 1078. There is no question, however, that the weight of authority would agree with the appellant's contention that Ark. Stat. Ann. § 41-512, supra, does not deprive one of the defense of justification if the law enforcement officer uses excessive force in making an arrest. But that does not mean that the trial court was in error with regard to the instructions given in this case.

In the first place, the jury certainly could have found that the appellant knew, or reasonably should have known, that the man in a uniform, with a badge, wearing a gun, and who told Foster to get in the police car, was a law enforcement officer. It was therefore clearly proper to instruct the jury that appellant did not have the right to use force to resist arrest by a person who was known, or reasonably appeared, to be a law enforcement officer.

And in the second place, assuming that the evidence would warrant an instruction with regard to the right of appellant to defend himself and Foster against the officer's use of excessive force, no specific instruction to that effect was requested by him. The court is not required to give a specific instruction when none is requested. *Schwindling* v. *State,* 269 Ark. 388, 602 S.W. 2d 639 (1980); *Tyler* v. *State,* 265 Ark. 822, 831, 581 S.W. 2d 328 (1979). If appellant wanted the jury instructed on any point not covered it was his duty to request an instruction correctly declaring the law on that subject. *Griffin* v. *State,* 248 Ark. 1223, 455 S.W. 2d 882 (1970).

So in the absence of a specific instruction on the point, we find no error in adding the language of the statute to the AMCI instruction. Without this modification the effect of the instruction would be that Barnes and Foster could use such force as they reasonably believed necessary to defend against any unlawful *force* they reasonably believed the deputy sheriff was about to inflict upon them. It was proper to add that they could not use force to resist *arrest* by the deputy sheriff — whether that arrest was lawful or unlawful.

### Imposition of Sentence

Appellant's final point is that the court should have postponed the imposition of sentence until after a hearing to determine if the appellant should be handled under the provisions of the Youthful Offender Alternative Service Act of 1975, Ark. Stat. Ann. §§ 43-2339, et seq. (Repl. 1977). A motion to this effect made after the verdict of the jury was returned was immediately denied by the court without comment.

In *Turner* v. *State*, 270 Ark. 969, 606 S.W. 2d 762 (1980) the court said the trial judge has discretionary authority under the act in two pertinent respects:

> One, the offender is eligible for sentencing under the act if "in the opinion of the sentencing trial court" his interests and those of the State would best be served by resort to the act. Two, if it appears to the trial court that the defendant "may be an eligible offender," the court shall postpone the imposition of sentence for not more than 30 days to allow the submission of written reports with regard to the eligibility of the offender for sentencing under the act.

In *Turner* when defense counsel asked that the imposition of sentence be passed for 30 days for a presentence report the judge said: "I am not interested in his record one way or another, I have heard all I need to hear." The Supreme Court said: "It is evident the court reached an arbitrary conclusion . . . . We do not, of course, disturb the trial court's exercise of discretion unless it is abused, but the statute does contemplate that discretion will actually be exercised."

We do not think the record here shows that the trial judge reached an arbitrary conclusion. He heard the appellant's testimony that he was twenty-four years of age (within a year of the maximum age of an eligible offender under the act) and that he had previous misdemeanor convictions for assault and battery as a result of fights. And while appellant said these occurred when he was between sixteen and nineteen years old, he was not sure that one incident did not occur on January 3, 1977 (about three years before the incident here involved), and when asked if an incident occurred on March 3, 1980, said "I don't know that I remember."

Under the record here we cannot say that the court abused its discretion with regard to the imposition of sentence.

Affirmed.