Argued and submitted October 31, 1986, affirmed November 25, 1987, reconsideration denied January 15, petition for review denied February 2, 1988 (305 Or 45)

## STATE OF OREGON,
*Respondent,*

*v.*

## BRYAN MAXWELL WARREN,
*Appellant.*

(85-4938, 85-4939, 85-4940;
CA A39000 (Control), A39001, A39002)
(Cases Consolidated)

745 P2d 822

Ralph M. Holman, Judge Pro Tempore.

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Defendant appeals his convictions for robbery and being an ex-convict in possession of a firearm. The issue is whether the trial court erred in admitting a confession by a co-defendant which incriminated defendant and which was inconsistent with the co-defendant's trial testimony. We affirm.

On June 3, 1985, at approximately 10:15 p.m., a Circle K store at the corner of Sunnyview and Lancaster Drive in Salem was robbed. The clerk testified that a man, about 6' 1" tall, weighing 180 to 190 pounds, with blond, shoulder-length hair, wearing a baseball cap, dark-framed glasses and jeans, and possibly having a tatoo on his hand, entered the store. He bought an ice cream cone and left but returned after another customer left. This time he showed a gun under a bag and ordered the clerk to put all the money from the cash register (approximately $230) into the bag. A man who had been using the phone outside the store testified that he saw a man wearing an orange cap enter and leave the store twice, then depart in a light-colored car driven by another person.

At approximately 10:40 the same evening, a Circle K store on Chemawa Road in Keizer was robbed. The clerk testified that a man, 30 to 35 years old, about 6' tall and weighing 200 pounds, with reddish-blond, collar-length hair, a mustache, gold square-rimmed glasses, wearing a red baseball cap, jeans, a black leather jacket and a long black and white scarf, told her to put all the money from the cash register into a bag that he was holding. She noticed a long black gun barrel protruding from under the bag. She gave the man approximately $40.

At approximately 11 p.m., the Circle K store at 6375 River Road North in Marion County was also robbed. The clerk described the robber as about 6' 3" to 6' 4" tall, weighing 200 pounds, having light brown hair and four days' growth of beard. He was wearing a heavy black leather jacket, blue jeans, a gray scarf and purplish-tinted round sunglasses. When the robber pulled out a gun, the clerk noticed a spider tatoo on the web of his right hand. He told the clerk to put all the money (approximately $160) in a bag. The clerk also testified that, a few minutes before he was robbed, he had seen a mid-1970's yellow Ford Mustang pull into the store parking lot. When the

robber left, the clerk saw him go to the side of the building where the car was parked.

Each of the store clerks called the police immediately. A Keizer police officer saw a light-colored car pull out of the parking lot at the River Road Circle K. The officer followed the car, and several other police vehicles joined the chase. The car drove across a bean field, where the police could not follow, but they saw it stop on Quince Street. When the officers reached the car, it was empty. At approximately 3 a.m., they saw defendant standing on a roadside near a wooded area. His hair was soaked, and he had leaves on his clothing. He was dressed in a black leather coat and jeans. The police arrested him.

A second suspect, Fields, was also arrested near Quince Street at approximately 7 a.m. The police found a brown paper bag containing $318.69 near Fields. They also seized the yellow Ford Mustang which they had found on Quince Street. Inside it, they found a pair of dark sunglasses, a long barrel-type gun, a package of gum, a package of cigarettes, two candy bar packages and a leather holster and ammunition.

Defendant was charged with three counts of first-degree robbery and of being an ex-convict in possession of a firearm. At trial, none of the store clerks was able to identify defendant positively as the robber. The state called Fields to testify against defendant. In response to the state's questions, Fields denied that he was with defendant on the night of the crime. He had previously signed a statement in which he had confessed to committing the robberies with defendant and had described in detail their activities that night. Fields denied at trial that he had made the statement. The statement was admitted in evidence over defendant's objection. Defendant was convicted by a jury verdict on all counts.

Defendant assigns error to the trial court's denial of his motion for a mistrial and to the admission of Fields' confession. He argues that the state placed Fields on the stand solely to elicit testimony which could be impeached by the confession and that it intended to use the confession as substantive evidence.

OEC 607 provides that "the credibility of a witness

may be attacked by any party, including the party calling the witness." The adoption of that rule was a significant change from the common law rule, which prohibits impeachment of one's own witness. An example of its application is *State v. Fuller,* 56 Or App 719, 643 P2d 382, *rev den* 293 Or 340 (1982), where a witness for the state in a rape trial had made statements before the trial which were supportive of the state's case. At trial, however, the witness' testimony did not support the state's case as strongly. The state introduced evidence impeaching the witness. We affirmed the trial court's refusal to grant the defendant's motion for a mistrial, finding no abuse of discretion. We noted that, although the impeachment would have been impermissible under *former* ORS 45.590, because the witness's trial testimony was not prejudicial to the state's case, under the Evidence Code the testimony was admissible.

The use of impeachment evidence against one's own witness is not without limitations. The limitations are discussed in cases under FRE 607, which is identical to OEC 607. For example, in *United States v. Hogan,* 763 F2d 697 (5th Cir 1985), a witness recanted his confession before he was called to the stand. The prosecution informed the jury of that in its opening statement and told the jury that it intended to use the confession as impeachment. Outside the presence of the jury, the witness recanted a second time, under oath. The Court of Appeals held that the prosecution could not introduce the confession, because it had made it clear that the witness was being called in order to get the confession in:

> "The government may call a witness it knows to be hostile, and it may impeach that witness's credibility. Surprise is not a necessary prerequisite to impeaching one's own witness under FRE 607. The prosecution, however, may not call a witness it knows to be hostile for the *primary* purpose of eliciting otherwise inadmissible impeachment testimony, for such a scheme merely serves as a subterfuge to avoid the hearsay rule." 763 F2d at 702. (Citations omitted.)

The court also noted that "limiting instructions can ameliorate a jury's confusion." 763 F2d at 702. None was given in *Hogan.*

In this case, we conclude that the trial court did not abuse its discretion in admitting the confession. There is no

evidence that the state knew before Fields took the stand that he would testify inconsistently with his confession. Indeed, the record indicates that the prosecutor was surprised by the testimony. We therefore cannot say that the state put Fields on the stand for the purpose of impeaching his testimony. In addition, the testimony was damaging to the state's case. Defendant was being tried for the robberies of three Circle K's on June 3, 1985. Fields testified that he was convicted of the Circle K robberies that occurred on June 3, 1985, but that he was not with defendant on that date. He also testified that he had not given a written statement. Officer Bostwick then testified that he had taken a statement from Fields, which was in direct contradiction to Field's testimony that he had not given a statement to officers. The impeachment testimony was permissible to undo the damage that Fields had done to the state's case. The trial court gave the jury an instruction limiting the use of the confession to its impeachment purpose.[1]

Affirmed.

---

[1] Defendant also argues that the trial court erred in admitting his co-defendant's confession because it was presumptively unreliable, citing *Lee v. Illinois,* 476 US ____, 106 S Ct 2056, 90 L Ed 2d 514 (1986). However, that case involved a bench trial, and the co-defendant whose confession was introduced as evidence was not available for cross-examination. The prosecution in that case also conceded that it sought to introduce the confession as substantive evidence. In the present case, the confession was introduced only for impeachment purposes, and the declarant was available for cross-examination. The jury had an opportunity to determine for itself whether the confession was reliable.