Argued and submitted January 21, 1999, affirmed February 9, 2000

## STATE OF OREGON,
*Respondent,*

*v.*

## KENNETH STALEY,
*Appellant.*

## (C9302-31280; CA A100322)

995 P2d 1217

See also, 142 Or App 583, 923 P2d 650.

William J. Hedges argued the cause and filed the brief for appellant.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

ARMSTRONG, J.

Deits, C. J., concurring.

_____

* Deits, C. J., *vice* Warren, P. J.

**ARMSTRONG, J.**

Defendant appeals his convictions for six counts of Sexual Abuse in the Third Degree, asserting that the trial court erred in admitting evidence of out-of-court statements by one of the alleged victims and of stories that defendant wrote and allegedly gave to the victims. We affirm.

Defendant was the drama teacher and girls' basketball coach at Marshall High School in Portland. In spring 1992, several female students complained about his actions, asserting that they constituted sexual harassment. The complaints led.to an investigation that culminated in February 1993, when defendant was indicted on 13 counts of sexual abuse. After a delay that was, at least in part, the result of a state's appeal on evidentiary issues, *State v. Staley*, 142 Or App 583, 923 P2d 650 (1996), *rev den* 324 Or 560 (1997), the case finally went to trial in August 1997. The jury convicted defendant of six counts involving four victims and acquitted him of the remaining seven counts, three of which involved one of the same four victims and four of which involved a fifth victim. All of the convictions involved charges that defendant had touched the victims on the buttocks; he was acquitted of the counts that charged touching in other places.

Defendant's first two assignments of error relate to the testimony of victim four[1] who was the victim in three counts, each of which resulted in a conviction. Although victim four testified at trial, she asserted that she could not remember anything that had happened, barely conceded that she might have had defendant as a teacher, and stated that she had moved on with her life and resented the state's requiring her to appear and testify. Victim four agreed that she had had an interview with Sergeant Leedom of the Portland School Police and that she had testified before the grand jury that indicted defendant. The state questioned her extensively about the interview and the grand jury testimony, but she was unable to remember any of the specific statements that the state described. The court permitted the state to treat her as a hostile witness, but it did not find—nor did the state ask it to find—that her loss of memory was feigned.

---

[1] Victim four was the fourth victim listed on the verdict form.

After victim four testified, the state called both Leedom and the Assistant District Attorney who had handled the grand jury proceedings. Leedom read his report of his December 17, 1992, interview with victim four. He testified that he wrote the report on January 21, 1993, and thereafter destroyed his notes of the interview. His testimony would permit the court to find that victim four had reviewed and approved Leedom's notes, but there is no evidence that she either saw or approved his report. The Assistant District Attorney, relying on her contemporaneous notes, described victim four's sworn testimony to the grand jury. There is no evidence that victim four saw or approved those notes. Defendant objected to the testimony of both witnesses.

According to Leedom's report, victim four told him that she had taken drama classes for the previous three years and that defendant had made her uncomfortable, either by what he said or by touching her, on numerous occasions. The examples that she gave included defendant telling her about his sexual experience with another student, commenting on how she looked in her tight clothing, patting her on the buttocks, various other instances of unnecessary physical contact, and comments about her probable sexual experience. She said that she told him to stop the comments but that he treated it as a joke. The Assistant District Attorney testified that victim four told the grand jury that defendant put his arm around her and gave her hugs that made her uncomfortable because she felt that they had sexual content, that another time he touched her thigh, that he told her during a rehearsal that she really didn't need to practice for her role as a sexually experienced older woman, and that on three separate occasions he put his hands on her buttocks. The testimony from Leedom and the Assistant District Attorney was the only evidence that would support the jury's verdict on the counts concerning victim four.

Defendant objected to this evidence on the ground that it was hearsay that did not come within any exception to the hearsay rule. On appeal, he also asserts that it was not proper impeachment, because any statement that victim four had previously made could not logically impeach her testimony that she no longer remembered what had occurred. Defendant does not assign error to any refusal to give an

instruction limiting the use of the evidence to impeachment, nor does he assert that the evidence was inadmissible because the state called victim four solely to introduce otherwise inadmissible evidence in the guise of impeachment. *Cf. State v. Warren*, 88 Or App 462, 466-67, 745 P2d 822 (1987), *rev den* 305 Or 45 (1988) (trial court properly admitted witness' confession for impeachment when state did not know that witness would testify inconsistently and witness' testimony was substantively damaging to state); *see also* Laird C. Kirkpatrick, *Oregon Evidence*, 331-32 (3d ed 1996).[2]

■    We first consider the admissibility of Leedom's report of his interview with victim four. The state argues that the report was admissible both as impeachment by a prior inconsistent statement and under OEC 803(5), which states the hearsay exception for prior recollection recorded. We begin with the latter argument. The rule provides that a hearsay statement is admissible if it is

> "[a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the memory of the witness and to reflect that knowledge correctly."

The only criterion of the rule that is seriously in issue is whether victim four adopted the contents of Leedom's report while her memory was fresh. Defendant argues that, according to Leedom, victim four reviewed and approved his *notes*, not his *report*, which he did not even write until a month after the interview.[3] We agree with defendant. Under the rule, a witness who did not record the prior recollection must have adopted the record of it in order for the record to be admissible. All that the court could find is that victim four adopted Leedom's notes. Although Leedom testified that his subsequent report reflected those notes, victim four did not review

---

[2] Defendant also raises a number of constitutional issues on appeal. Because he raised no constitutional issues at the trial court, we do not consider them.

[3] The state argues that defendant did not raise this precise point at trial. However, defendant's objection to the report on the ground that it was hearsay was sufficient to require the state to show either that it was not hearsay or that it fit the requirements of one of the exceptions to the hearsay rule.

the report or adopt it. The report is not admissible under OEC 803(5).

■ The state also argues that Leedom's report was admissible as impeachment by prior inconsistent statement. The state followed the procedural steps for such impeachment, *see* OEC 613, and defendant did not request a limiting instruction. The controlling issue on appeal is whether it was appropriate to impeach victim four's asserted lack of memory by showing the substantive statements that she allegedly made when her memory was fresh.[4] As a matter of logic, that is not appropriate impeachment by inconsistent statement. The fact that a witness once stated that something was true is not logically inconsistent with a subsequent loss of memory. The only thing that *is* inconsistent with a claimed loss of memory is evidence that suggests that the witness in fact remembers. The state's argument is based on its belief that the law has developed in a way that is not fully consistent with logic. That argument is based on a misreading of the relevant Oregon cases.

The starting point for analyzing the state's argument is the realization that victim four's testimony was, from a legal standpoint, nothing. No part of her testimony made it more or less likely that defendant had committed the crimes with which he was charged, because no part of it was directly or indirectly related to those crimes. The only substantive testimony that victim four gave was that she had no substantive testimony to give. Showing the substantive statements that she allegedly made when her memory was fresh does not impeach that testimony. The fact that a witness once stated that something was true is not logically inconsistent with a subsequent loss of memory. The only thing that *is* inconsistent with a claimed loss of memory is evidence that suggests that the witness in fact remembers.

In discussing this issue, it is important to keep clear precisely what victim four's testimony did and did not contain, because her testimony is an example of the first of two possible situations. The state's and the concurrence's failure

---

[1] Although the state on appeal suggests that victim four feigned her loss of memory, it did not ask the trial court to make any determination on the subject, and we therefore do not consider what effect the trial court's doing so might have.

to keep those situations distinct is the heart of their error. In the first situation, the witness, because of loss of memory or some other reason, gives no relevant testimony. A previous substantive statement, therefore, has no logical relationship to the witness' testimony. Thus, victim four testified *only* that she had no memory of what had occurred between defendant and her. Because of her loss of memory, her testimony was favorable to neither party and had no tendency to make the existence of any fact that was of consequence to the case more or less probable. *See* OEC 401 (defining relevant evidence). Her testimony could not have been inconsistent with anything that she had told Leedom. Because victim four's only substantive testimony was that she had no testimony to give, logically the only impeachment of that testimony would be to show that she in fact did remember something relevant. Her previous substantive statements do not impeach her testimony that, at the time of trial, she had no present recollection of the relevant facts.

The second of the two possible situations arises when a witness does testify substantively in a way that is inconsistent with statements that the witness had previously made. If the testimony damages a party—which can happen only if it is legally relevant to the issues that the finder of fact must decide—then that party is entitled to prove the previous inconsistent statement in order to impeach the accuracy of the damaging testimony. Both before and after the adoption of the Evidence Code, the impeaching party had to lay a foundation in order to introduce extrinsic evidence of the previous statement; for the purposes of this case, the differences between the foundations under the Evidence Code and under previous law are not significant. *See* OEC 613(2); *former* ORS 45.610 (1979); *State v. Nortin*, 170 Or 296, 309-22, 133 P2d 252 (1943). Cases that involve the second situation focus on whether the impeaching party laid a proper foundation for the impeaching evidence, not on whether the statement was inconsistent with the trial testimony.

In order to lay a foundation for using a prior inconsistent statement, the impeaching party must give the witness an opportunity to explain or deny the inconsistent statement; at times the witness will testify that he or she does not remember the prior statement. That loss of memory of the

content of a specific statement, which may occur in the second situation, is different from a loss of memory of the underlying events, which is the heart of the first situation. All previous Oregon cases of which we are aware, including those that the parties cite, involve the second situation: a witness who gave substantive testimony that was inconsistent with the previous statement and then could not remember having made the previous statement. None involves the first situation: a witness who gave no substantive testimony at all because of a loss of memory of the underlying events.

The question in this case is not the foundation that is necessary under OEC 613(2) to impeach a witness with a prior inconsistent statement but what makes a statement inconsistent with a witness' substantive testimony. The state argues that two cases show that a prior substantive statement is inconsistent with a current loss of memory of what happened. However, each of those cases involved the second situation—a loss of memory of the prior statement—rather than the first—a loss of memory of the events themselves. In each case, the issue that we considered was whether the party had laid a proper foundation for using the prior statement for impeachment. In *State v. Bruce*, 31 Or App 1189, 572 P2d 351 (1977), *rev den* 282 Or 385 (1978), a prosecution witness testified in a way that was contrary to the state's view of the facts. She then stated on cross-examination that she did not remember making a statement to the police that was inconsistent with her trial testimony. We held that the trial court properly allowed evidence of her prior inconsistent statement, pointing out that her " 'I don't remember' answers were in response to questions asked concerning the prior inconsistent statements and were the equivalent of 'No, I did not say that' for the purpose of allowing the state to introduce the collateral proof of the statements through the officer." 31 Or App at 1194.

Our concern in *Bruce* was whether the state had laid a proper foundation for the impeachment; we recognized that the witness' previous statement was inconsistent with her testimony at trial. We emphasized that, under the law as it then stood, requirements for impeachment of one's own witness included that the witness' testimony related to a material matter and was prejudicial to the party who called the

witness. *Id.* at 1193. *Bruce* is thus an example of the second situation, because the witness did not claim to have lost her memory of the underlying events.

The state and the concurrence also rely on *State v. Van Gorder*, 56 Or App 83, 641 P2d 584, *rev den* 293 Or 146 (1982), in which the defendant was indicted for manslaughter as the result of the death of a person who was observing the defendant and another person, Nilsen, participate in a game of Russian roulette. Nilsen, as the only survivor of the events other than the defendant, was apparently the state's primary witness. On cross-examination, the defendant attempted to impeach Nilsen by showing that he had previously made statements that, the defense said, were inconsistent with his trial testimony. Nilsen did not remember making the statements. We held that the trial court erred when it refused to permit extrinsic evidence of the statements. We reiterated "our previous holding [in *Bruce*] that, if a proper foundation has been laid, when a witness testifies that he is unsure or does not remember having made a particular statement, the witness may be impeached by evidence that he made the alleged statements." 56 Or App at 89.

The state and the concurrence fail to recognize that that statement from *Van Gorder* is part of our discussion of the necessary foundation for using Nilsen's inconsistent statements; it is not a discussion of what made the statements inconsistent. That is clear from the three authorities on which we relied in *Van Gorder*. The first, *Bruce,* clearly involved statements that were inconsistent with the witness' substantive testimony. The same is true of the second, *State v. Young,* 1 Or App 562, 463 P2d 374 (1970) in which the witness denied working for the defendant as a prostitute but failed to recall a telephone conversation in which she had made statements indicating that that was what she was doing. We held that it was not error to allow the state to play a recording of the conversation to impeach the witness. The final authority that we cited, Edward W. Cleary, ed., *McCormick on Evidence* § 37, 72 (2d ed 1972), is entirely concerned with the necessary foundation for impeachment by a prior inconsistent statement. *Van Gorder*, thus, is another example of the second situation.

In this case, unlike *Bruce* and *Van Gorder*, we are faced with the first situation, in which the witness does not remember the underlying events. Although there are no previous Oregon cases that deal with that situation, courts in other states have done so. Although they have reached different conclusions, the best considered cases hold that a previous statement about the underlying events is not inconsistent with a failure to remember those events at trial. As a result, they do not allow impeachment by a previous statement about the events that the witness no longer remembers. *See* Anno, 99 ALR3d 934 §§ 6(a) (previous statements admissible as impeachment),[5] 6(b) (previous statements inadmissible). We agree with the discussion in *People v. Sam*, 71 Cal 3d 194, 77 Cal Rptr 804, 454 P2d 700 (1969). In *Sam*, the state called Tubby to testify concerning a previous altercation with the defendant. Tubby, however, testified only that he had been too drunk at the time to remember anything. The trial court then allowed an officer to testify concerning a statement that Tubby had given and signed shortly after the altercation. The court first held that the trial court erred in admitting the statement as substantive evidence and then turned to whether it was proper impeachment. It first pointed out that impeachment "is the process of challenging or impugning the credibility of a witness" and that at trial "Tubby testified that he had no present recollection of either the incident * * * or the report he gave * * * because he had been drinking at the time. This was his entire testimony." It then explained why Tubby's previous statement did not impeach his trial testimony:

> "Granted that the officer's experienced observation and the fact that a report was made and signed tended to impeach Tubby's assertion of drunkenness, it is not clear how the *contents* of that report impeached anything Tubby said on the stand. There is nothing necessarily inconsistent between the fact that Tubby gave a statement to the officer over two years earlier—or the substance of that statement—and his present claim of lack of recollection. Indeed, the circumstances can be quite consistent."

454 P2d at 708 (emphasis in original).

---

[5] At least some of the cases cited in this section of the annotation, including *Nortin*, actually involve the second situation rather than the first.

The California court's analysis is consistent with the essential common-law and statutory requirement for impeachment by prior inconsistent statement: the previous statement must be inconsistent. In this case, there were almost five, rather than two, years between victim four's statement to Leedom and her inability to remember at trial; the fact that she made a statement in December 1992 has no logical capacity to impeach her lack of memory in August 1997. We hold that the trial court erred by admitting evidence of victim four's statement for impeachment.

■ We also hold, on the other hand, that the trial court properly admitted evidence of victim four's testimony to the grand jury as substantive evidence, not as impeachment. The state argues that the testimony was admissible under OEC 801(4)(a)(A), which provides:

"A statement is not hearsay if:

"(a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

"(A) Inconsistent with the testimony of the witness and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition[.]"

Testimony before a grand jury is testimony at an "other proceeding" under the rule. It is not necessary that the grand jury testimony be recorded. A prosecutor who was present at the grand jury hearing may testify at trial concerning what a witness told a grand jury under oath, if the evidence is otherwise admissible under this rule. *State v. Dickerson*, 112 Or App 51, 54-55, 827 P2d 1354, *rev den* 313 Or 627 (1992).

The question, thus, is whether victim four's testimony to the grand jury, in which she stated that defendant had engaged in a variety of inappropriate activities, was inconsistent with her trial testimony, in which she stated that she could not remember anything that happened. Our conclusion that victim four's statements to Leedom were not inconsistent with her trial testimony for purposes of impeachment under OEC 613(2) suggests that, because she gave no substantive testimony at trial, there was nothing

with which the earlier testimony could be inconsistent. That suggestion, however, does not resolve the issue.

The state first argues that the legislature specifically intended the prior testimony to be admissible under this rule. It relies on the legislative commentary to OEC 801(4)(a)(A), which provides that the "Legislative Assembly intends that 'inconsistent' include situations where a witness denies making a prior statement or does not remember the content of the statement." According to the state, the commentary resolves this issue: Victim four did not remember the content of her grand jury testimony and it is therefore inconsistent with her trial testimony. The problem with the state's argument is that the inconsistency that the commentary identifies concerns the witness' memory of the *statement*, not the memory of the underlying events. That is, the commentary deals with the second situation, but it is the first situation that exists in this case. The commentary does not directly suggest that a prior substantive statement is inconsistent with a loss of memory of the underlying events.

The state also points to federal cases under FRE 801(d)(1)(A), which is essentially identical to and the source of OEC 801(4)(a)(A), that hold that a trial court has discretion to treat a previous statement that satisfies the conditions of the rule as inconsistent with a witness' failure of memory at trial. Those courts hold that inconsistency may be found in silence as well as in evasive answers and changes in position. Particularly when there is a manifest reluctance to testify, the rule makes grand jury testimony admissible when the witness forgets the events at the time of trial. A court's decision to admit a prior statement under those circumstances is reviewable only for abuse of discretion. *United States v. Williams*, 737 F2d 594, 609 (7th Cir 1984); *see also U.S. v. Milton*, 8 F3d 39, 47 (DC Cir 1993); *United States v. Russell*, 712 F2d 1256, 1258 (8th Cir 1983).

We agree with the result that the federal cases reach because using evidence of a previous *sworn* statement as *substantive evidence* under OEC 801(4)(a)(A) is different from using a previous *unsworn* statement as *impeachment* under OEC 613(2). The purpose of using a sworn statement as substantive evidence is not to raise questions about the accuracy

of the witness' testimony but to provide an alternative, reliable source of information about what occurred when the witness is unable to give substantive testimony. In contrast to the wide variety of statements that are useable for impeachment, only a few narrowly defined statements, all of which are taken under oath, are admissible for their substance. The rule allows a party to use evidence that a witness previously gave in circumstances that show its reliability as substantive evidence to cure the witness' subsequent loss of memory and thereby to ensure that the jury receives the most reliable available evidence of what the witness observed. As the federal cases suggest, admitting a previous statement under the rule is a discretionary decision that depends on a number of factors. In this case, although it had been five years since the events, and over four years since the grand jury testimony, the nature of victim four's testimony was such that we cannot say that the trial court erred in admitting the grand jury testimony.

■ The grand jury testimony was, if anything, more significant to the jury's consideration of the case than was Leedom's report. Among other things, victim four told the grand jury that defendant had patted her on the buttocks three times, a level of specificity that was not in Leedom's report. The jury convicted defendant of three counts of sexual abuse, each of which involved one incident of touching victim four on the buttocks. We therefore conclude that the erroneous admission of Leedom's report was unlikely to have affected the outcome of the trial and, thus, was harmless error.

■ Finally, defendant assigns error to the admission of stories with significant sexual content that he wrote and gave to at least some students to read. Defendant argues that the stories were irrelevant and that, if they had any marginal relevance, then their admission was overly prejudicial under OEC 403. The stories were clearly relevant because they made it more likely that defendant had a sexual purpose in touching the victims. We cannot say that the trial court abused its discretion in deciding that their probative value outweighed any prejudicial effect.

Affirmed.

**DEITS, C. J.,** concurring.

I agree with the majority opinion in all respects except its conclusion that Officer Leedom's report was not properly admitted as impeachment by prior inconsistent statement under OEC 613(2). I believe that the trial court properly admitted the report on that basis.

The majority holds that victim four's asserted lack of memory may not be impeached by substantive statements that she allegedly made to Officer Leedom. The majority reasons that the fact that a witness once stated that something was true is not logically inconsistent with a subsequent loss of memory; that the only thing that would be inconsistent with a claimed loss of memory is evidence that shows that the witness in fact remembers what happened. The majority asserts that its holding is consistent with Oregon case law, as well as what it characterizes as the "best considered" decisions of other jurisdictions.

I have a number of problems with the majority's reasoning and conclusions. My disagreement with the majority on this issue begins with its misunderstanding of the record in this case. The majority's analysis is based on its perception that victim four denied any memory of the events that occurred in 1992, but that she did not deny making statements regarding those events to Office Leedom. The majority states "victim four testified *only* that she had no memory of what had occurred between defendant and her." 165 Or App at 401 (emphasis in original). That is incorrect. In fact, the testimony victim four gave at trial concerned, almost solely, her earlier *statements about the events*, not the underlying events. In addition to being asked a number of questions about her participation in the interview with Leedom and her participation in the grand jury proceedings, victim four was asked seven times whether she remembered making specific statements to Leedom and thirteen times whether she remembered making specific statements to the grand jury. She was asked only one question about any of the actual events underlying the charges against defendant. She testified, in part:

"Q   Well, do you recall any of the information that's contained in that police report? Do you recall making any of those statements?

"A   No.

"* * * * *

"Q   At that time, you told the grand jury that there were at least three occasions when the defendant hit you on the butt and said, quote, you're looking good, and that he made comments about your body; did you not tell the grand jury that?

"A   I don't remember.

"Q   Do you recall telling the grand jury that while you were in drama class that the defendant placed his hand upon your thigh and indicated that you had soft skin and that the boys probably liked that?

"A   I don't remember.

"Q   Do you recall telling the school police officer, Officer Leedom, that those events had occurred?

"A   No, I don't remember.

"Q   You don't remember making those statements?

"A   No.

"Q   Do you recall telling the grand jury that there was an occasion when the defendant and you were in a dressing room and there was a conversation about the hem of a skirt and at that time he lifted your skirt up?

"* * * * *

"THE WITNESS: I don't recall.

"* * * * *

"Q   Do you recall telling Officer Leedom that, about that event, Mr. Staley telling you about getting a blow job?

"* * * * *

"THE WITNESS: I don't recall.

"* * * * *

"Q   You don't recall making those statements to the grand jury?

"A   No.

"Q   Do you recall telling Officer Leedom —

"A   No, I —

"Q   — that you were playing the role of an older woman and that you were to come down the stairs after having had sex and that the defendant said to you as you were playing the role of a sexually experienced woman, Like you, [victim four].

"* * * * *

"THE WITNESS: No."

I would hold that victim four's denial that she made the statements to Officer Leedom in 1992 allowed the trial court to conclude that those statements could be introduced as prior inconsistent statements. Underlying the majority's conclusion that the statements were not admissible as inconsistent statements is the premise that the effect of victim four's assertion that she did not remember making the statements is neutral; that it did no damage to the state's case. However, her denial of any recollection of the statements is not neutral. Rather, as I will discuss, her testimony amounts to a denial that she made the statements and the effect of that denial on the state's case is not neutral. If it is accepted that victim four did not make any statements to Leedom at the time of the incidents, then that clearly undermines the state's case.

The majority's claim that its conclusion, that victim four's statements to Officer Leedom are not admissible as prior inconsistent statements, is consistent with our case law is also wrong. That conclusion is *not* consistent with Oregon case law. In *State v. Van Gorder*, 56 Or App 83, 641 P2d 584, *rev den* 293 Or 146 (1982), a witness testified that he did not remember or was unsure of having made particular statements to an investigator. The trial court refused to allow the defendant to impeach the witness through the investigator's testimony as to the witness's earlier statements. The testimony that the state sought to introduce included the substance of the statements that the witness had made to the investigator. In *Van Gorder*, the state argued exactly the same position that the majority takes here; namely, that

when a witness doesn't recall making a statement, you cannot impeach that witness with an earlier statement because there is nothing inconsistent between the witness's statement at trial and the earlier statements. We disagreed with the state's assertion, explaining that:

> "The defendant contends that, when a witness testifies that he does not recall or is unsure of making a statement, there is a basis for impeaching the witness by his previous statement. *The state, on the other hand, contends that there is nothing 'inconsistent' in the witness' testimony* which would provide a basis for impeachment and relies on *State v. Miller,* 35 Or App 207, 582 P2d 1378, *vacated on other grounds,* 36 Or App 859, 585 P2d 772 (1978). *Miller,* however, is not helpful. We concluded in that case that when a witness' answer to a question was an agreement that he had told an investigator exactly what he was alleged to have told him, there was nothing to impeach. 35 Or App at 211. That is not the case at hand. We reiterate our previous holding that, if a proper foundation has been laid, *when a witness testifies that he is unsure of or does not remember having made a particular statement, the witness may be impeached by evidence that he made the alleged statements.* As this court pointed out in *State v. Bruce,* 31 Or App 1189, 1194, 572 P2d 351 (1977), *rev den* 282 Or 385 (1978), for impeachment purposes '[t]he 11 'I don't remember" answers * * * in response to questions asked concerning the prior inconsistent statements * * * were the equivalent of "No, I did not say that" * * *.' *See also, State v. Young,* 1 Or App 562, 463 P2d 374, *rev den* (1970); McCormick, Evidence 72, § 37 (2d ed Cleary 1972). Defendant was entitled to introduce *testimony by his investigator as to Nilsen's prior statements to the investigator* which Nilsen testified he was unsure of having made or did not remember making. The investigator's impeaching testimony should have been admitted." *Id.* at 88-89 (emphasis added).

The majority reads *Van Gorder* as requiring that a witness must have given some *substantive* testimony that is inconsistent with the prior statements to justify introducing the earlier statements as prior inconsistent statements under OEC 613. Although it is true that the witness there had given some substantive testimony that was inconsistent with his earlier statements, our holding that the statements were admissible was not dependant on that fact. In fact, it

was the ruling of the trial court distinguishing between substantive and nonsubstantive testimony that we reversed in *Van Gorder*. The trial court had ruled that only the statements that were inconsistent with substantive evidence already in the record were admissible:

> " 'Well, the witness was asked if he had made certain statements to [defendant's investigator]. In some cases, he said he could not recall; in some cases, he said he could not remember whether he made the precise statement or not; in other cases, he agreed that he had made the statements; and in some cases he denied the statements.'

> "\* \* \* \* \*

> " '*The only ones that properly can be read are those statements which contradict his testimony*. In other words, impeach the witness. If you can identify those, you may read those to the jury or have [the investigator] read them to the jury.' " *Id*. at 88 (emphasis added).

In addition to being supported by existing Oregon case law, the allowance of the witnesses' prior statements under these circumstances is consistent with the purpose and limitations of this exception to the hearsay rule. This exception was not designed to be used as a subterfuge for getting in otherwise admissible evidence. As McCormick explains: "It has been widely held that a criminal prosecutor may not employ a prior inconsistent statement to impeach a witness as a 'mere subterfuge' or for the '*primary* purpose' of placing before the jury substantive evidence which is otherwise inadmissible." John W. Strong, ed., *McCormick on Evidence*, ch 5, § 38, 142 (5th ed 1999) (emphasis in original). Because of that, the question of how much inconsistency is needed before the introduction of prior inconsistent statements to impeach a witness is allowed requires that we balance the need to be able to properly assess the credibility of the witness against the need to prevent the misuse of this exception to gain admission for evidence that otherwise is inadmissible.

Here, victim four testified that she vaguely remembered being interviewed by Leedom. However, after being shown his report of that interview, she testified she did not recall making any of the statements in it. As in *Van Gorder*, her failure to recall was the equivalent of her saying, "No, I

did not say that" and that denial was inconsistent with her prior statements. This is a case where, on balance, the evidence is necessary to assess the credibility of this critical witness. Victim four was sufficiently alerted to the statements' existence and she was given an "opportunity to explain or deny" them. In addition, defendant was afforded the opportunity to interrogate both victim four and Leedom with respect to the statements in the report. The trial court made the correct decision in admitting this testimony as a prior inconsistent statement.

Finally, although acknowledging that there is authority that goes both ways on this issue, the majority finds support in what it views as the "best considered" discussions from other jurisdictions. I question how helpful it is to look to decisions of other jurisdictions in circumstances such as this, where there is Oregon authority on this question and the decisions of other jurisdictions are quite mixed. Nevertheless, not suprisingly, I find the reasoning of jurisdictions that reach the same conclusion that I do to be the most persuasive.[1]

For all of the above reasons, I would hold that Officer Leedom's testimony regarding the statements that victim four made to him was properly admitted by the trial court as a prior inconsistent statement.

---

[1] *See, e.g., State v. Lenarchick,* 247 NW 2d 80 (Wis 1976), *as analyzed in* Debra T. Landis, Annotation, *Denial of Recollection as Inconsistent with Prior Statement so as to Render Statement Admissible,* 99 ALR 3d 906 (1976). The witness in Lenarchick, testified at trial, that while she remembered all of the circumstances surrounding her earlier statement to police and the events contained in that statement, she had no recall of either the events in question or the content of her statement to the police. There, as here, it was "apparent that the trial judge, with reason, doubted the good faith of [the witness's] trial protestations of lack of memory, and, on that basis and in the exercise of judicial discretion, could declare her trial testimony inconsistent and lay the ground for the admission of the police statement."